COMMONWEALTH of Pennsylvania, Appellant

v.

Edwin BURGOS, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 24, 2012.

Filed Feb. 20, 2013.

Reargument Denied April 24, 2013.

---

Melissa J. Noyes, Assistant District Attorney, Reading, for Commonwealth, appellant.

James M. Polyak, Reading, for appellee.

BEFORE: SHOGAN, J., LAZARUS, J., and OTT, J.

OPINION BY OTT, J.:

The Commonwealth appeals from the order entered on April 3, 2012, granting Appellee's, Edwin Burgos's, motion to suppress all evidence derived from the use of a mobile tracking device (also known as a "global positioning system" or "GPS tracking device") on Burgos's car, the stop and search of Burgos's car, and the search of the premises located at 630 North Mohr Street, Allentown, Pennsylvania. The

Commonwealth asserts the trial court erred in granting the motion based on the following: (1) the court misapplied the holding of *United States v. Jones*, —— U.S. ——, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (decided January 23, 2012) because the officers, in this case, acted within the parameters of the court's authorization of the GPS tracking device pursuant to Section 5761 of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act")[1] and they possessed the requisite level of suspicion under the statute; (2) the court erred in applying the search warrant requirements set forth in Pa.R.Crim.P. 200 *et seq.* where none existed under Section 5761; and (3) the court erred in suppressing the evidence where the officers acted in good faith on the existing law at the time of search. *See* Commonwealth's Brief at 4. After a thorough review of the record, the parties' briefs, and the applicable law, we reverse the court's order and remand for further proceedings.

In addressing Burgos's suppression motion, the court made the following findings of fact:

> In October and November 2010, Detective [Todd] Harris [of the Berks County Police Department] was involved in an investigation of cocaine and marijuana trafficking in Berks and Montgomery Counties. The investigation was pursued, in part, through the use of wiretaps. On November 5, 2010, based on information gained, in part, from the wiretaps, Detective Harris and other law enforcement officials executed search warrants. At least two of the searches turned up what the detectives described as high grade marijuana.

> Eight individuals were arrested as a result of that investigation; five agreed to cooperate and became confidential informants for Detective Harris. Two of these individuals, designated in the documents as CS # 1 and CS # 2 provided information to the effect that the supplier of the marijuana that had been seized in the earlier search warrants was an individual named "Edwin." The CS # 1 and CS # 2 described "Edwin's" vehicle and place of residence. CS # 2 further provided [Burgos]'s full name, and both individuals identified a photograph of him.

> The informants described in detail how [Burgos] obtains his supply of marijuana by traveling to Georgia and Michigan, and transports it back to Berks County in a hidden compartment in the toolbox of the pickup truck registered to [Burgos].

> The information provided by CS # 1 and CS # 2 was corroborated by conversations intercepted in the Court ordered wiretaps, wherein several of the individuals intercepted referred to the supplier of their marijuana as "Edwin." Police surveillance verified [Burgos]'s residence as being located at 1315 Muhlenberg Street in the City of Reading and that [Burgos] operated a white Dodge Ram pickup truck bearing Pennsylvania registration YVE–1957. Further, the truck had the large toolbox described by CS # 1 and CS # 2, and a check of Pennsylvania Department of Transportation records verified [Burgos]'s address as well as the registration of the pickup truck.

> On March 25, 2011, an order authorizing the installation and use of a mobile tracking device was entered, pursuant to 18 Pa.C.S. § 5761. The order authorized the attachment of the device to [Burgos]'s white Dodge Ram pickup truck. On March 28, 2011, the mobile tracking device was successfully placed

---

1. 18 Pa.C.S. § 5701 *et seq.*

on [Burgos]'s vehicle. The mobile tracking device enabled Detective Harris and his colleagues to monitor the activities of [Burgos], insofar as his travels were concerned. The search warrant authorizing the search of [Burgos]'s vehicle, which was obtained after a traffic stop on April 4, 2011, sets forth in detail [Burgos]'s movements from the morning of April 2, 2011, until the evening of April 4, 2011. On April 2, [Burgos] traveled from his residence to a home in Allentown, located in the 600 block of North Mohr Street. After leaving that area at 11:05 a.m., [Burgos] made several stops in the vicinity of Allentown, and at approximately 12:56 p.m. the vehicle departed and headed west and south, ultimately stopping near Dublin, Virginia, at approximately 8:20 p.m.

On the morning of April 3, 2011, at approximately 6:03 a.m. the vehicle departed the location in Dublin, and traveled through North and South Carolina and into Georgia, stopping in the area of Midvale, Georgia, at about 12:33 p.m. The vehicle remained at that location until the early morning of April 4, and at 6:22 that morning, [Burgos]'s vehicle moved a short distance. Approximately one-half hour later, the vehicle began to retrace its route north through Georgia, South Carolina, and North Carolina.

During this time period, Detective Harris received a message from CS # 1, who informed Detective Harris that [Burgos] was in South Carolina picking up marijuana to be returned to Berks County, and that [Burgos]'s wife was traveling with him. He also provided further information on the location of the secret compartment in the toolbox of the truck and revealed the fact that tools are required to dismantle it.

The vehicle was traced via the mobile tracking device all the way back to Pennsylvania and visual surveillance on the vehicle began as the vehicle entered the Pennsylvania Turnpike. [Burgos] was under surveillance until he was stopped by Trooper Anthony Todaro, of the Pennsylvania State Police at approximately 9:30 p.m. on Route 222 in southern Berks County. After the vehicle was stopped, the search warrant was obtained, and the vehicle was towed to the Pennsylvania State Police Barracks in the City of Reading and ultimately searched. Among the items found during the course of the search were thirty-four (34) black plastic bags containing marijuana, which had been secreted in a special compartment in the toolbox of [Burgos]'s pickup truck.

Subsequent to the search of the truck, officers obtained an additional search warrant for [the] premises located at 630 North Mohr Street in Allentown, Lehigh County, Pennsylvania. The search was based on information that was developed in the search warrant for [Burgos]'s vehicle, and included information to the effect that on March 28, 2011, [Burgos] traveled from his residence in Reading to the North Mohr Street area, returning that evening. The warrant affidavit for the North Mohr Street residence then repeats the information contained in the warrant for [Burgos]'s vehicle by detailing [Burgos]'s movements from April 2 to the evening of April 4 when the traffic stop of [Burgos]'s vehicle was made. The warrant application included the observation that immediately prior to traveling to Georgia, [Burgos] left his residence, traveled for approximately one hour to reach the 630 North Mohr Street address, where he stayed twenty-seven (27) minutes before leaving on the trek to Georgia. The search warrant for the 630 North Mohr Street address was obtained on April 5, 2011. The

averments in the warrant affidavit indicate that the 630 North Mohr Street residence is owned by [Burgos]'s father, and not by [Burgos].

The reliability of the information provided by CS #1 and CS #2 was checked and verified in several different ways. First, they were interviewed separately, so that they could not bolster each other's credibility in a group setting, nor tailor their information to match. Second, information obtained during the course of the wiretaps, which would have been unknown to CS #1 and CS #2 was consistent with the information they provided to Detective Harris. Third, the investigators conducted surveillance of [Burgos], his residence, and his father's residence. Additionally, both sources having been previously arrested made statements against their penal interest. Finally, during the duration of [Burgos]'s trip to Georgia, CS #1, who did not know of the surveillance operation, contacted Detective Harris to inform him that [Burgos] was making a trip south to pick up drugs, and that he was accompanied by his wife.

In addition to the aforementioned marijuana, the search of [Burgos]'s vehicle and the persons of [Burgos] and his wife revealed three cellular telephones and approximately one hundred eighty-eight dollars ($188.00) in United States currency. The search of the North Mohr Street residence revealed a cash-counting machine and a box of .38 caliber ammunition.

Trial Court Opinion, 12/14/2011, at 2–5.

Burgos was charged with possession with the intent to deliver marijuana, possession of a controlled substance, and criminal conspiracy.[2] On September 8, 2011, he filed a motion to suppress, wherein he requested suppression of evidence obtained as a result of the GPS placement and monitoring, evidence seized from his truck, his statement regarding marijuana in the hidden compartment of the truck, and evidence seized from the 630 Mohr Street residence. A hearing was held on October 3, 2011, where the court heard testimony from Detective Harris relating to the traffic stop, the procurement of the search warrant for the vehicle, the results of the search of the vehicle, and the detective's interaction with Burgos.

On December 14, 2011, the court entered an order and opinion, denying Burgos's suppression motion. Specifically, the court found the warrant, which was supported by probable cause, permitted the search of the vehicle, and the traffic stop was lawful since it was also supported by probable cause. The decision was grounded in the court's determination that when applying for the order authorizing the use of the mobile tracking device, the Commonwealth's information established probable cause for its issuance, a standard greater than mandated under Section 5761, which only required reasonable suspicion.

On March 5, 2012, Burgos filed a motion for reconsideration in light of the recent United States Supreme Court decision in *Jones, supra.* As will be more fully discussed below, the *Jones* Court determined that the governmental installation and monitoring of a GPS device on a target's vehicle constitutes a "search" under the Fourth Amendment of the United States Constitution. *Jones,* 132 S.Ct. at 949.

---

**2.** 35 P.S. § 780–113(a)(30), 35 P.S. § 780–113(a)(16), and 18 Pa.C.S. § 903(a), respectively.

On April 3, 2012, after interpreting *Jones*, the trial court entered an order reversing its original suppression decision and granting Burgos's motion as to all evidence. The court concluded "that *Jones* stands for the proposition that the use of a GPS tracking device on a suspect's vehicle is subject to the requirement that it cannot be conducted without a warrant based on a finding of probable cause." Trial Court Opinion, 4/3/2012, at 3. Moreover, the court determined Section 5761 was no longer applicable and the search warrant requirements specified in the Pennsylvania Rules of Criminal Procedure [3] governed the present matter. *Id.* at 4. The court found the police violated several search warrant requirements and opined that it was constrained to conclude that the evidence should be suppressed. *Id.* at 7. The Commonwealth filed this interlocutory appeal as of right. *See* Pa. R.A.P. 311(d).

When reviewing a grant of a suppression motion, the appropriate scope and standard of review are as follows:

> We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read

in the context of the record as a whole remains uncontradicted.

> Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.

*Commonwealth v. Powell,* 994 A.2d 1096, 1101 (Pa.Super.2010) (citations omitted).

Based on the nature of the Commonwealth's issues, we will address its first two arguments together. In the Commonwealth's first argument, it concedes the installation and subsequent monitoring of the GPS on Burgos's truck was a "search" for purposes of Fourth Amendment analysis based on the decision in *Jones*. Nevertheless, it claims the trial court misinterpreted *Jones* by concluding that a search conducted through GPS monitoring is *per se* unreasonable. The Commonwealth states the *Jones* Court did not decide whether the GPS installation constituted an unreasonable search, as is required for one to find a violation of the Fourth Amendment. Further, the Commonwealth states the use of the GPS tracker was reasonable where it was a 10–day period of monitoring, corroborated by the confidential informants, and concerned Burgos's travels.[4] In its second argument, the Commonwealth asserts that the trial court "improperly inferred a warrant requirement" based on *Jones*. Commonwealth's Brief at 16. It points out that prior to placement of the GPS tracking device on Burgos's vehicle, the police obtained a statutorily prescribed wiretap order, approved by judicial authority, pursuant to Section 5761. The Commonwealth states that Section 5761 only requires that police have reasonable suspicion to obtain the

---

**3.** *See* Pa.R.Crim.P. 200 *et seq.*

**4.** The Commonwealth also asserts that the court erred in suppressing the evidence seized

from the 630 Mohr Street residence because Burgos did not establish a privacy interest in the home.

order and here, the court found that probable cause was established. Therefore, the Commonwealth contends it exceeded the minimum statutory requirement and satisfied the mandates of the Fourth Amendment and legal precedent. *Id.* at 17. It noted that the Legislature enacted the Wiretap Act with certain procedures distinct from traditional warrant requirements because the "investigative necessity of wiretaps and GPS monitoring requires a level of secrecy that cannot be achieved with search warrant requirements." *Id.* at 18. Therefore, the Commonwealth maintains the trial court erred in suppressing the evidence in this case.

This matter is one of first impression on the appellate level in Pennsylvania as neither this Court nor the Pennsylvania Supreme Court has addressed the application of *Jones.* Moreover, case law is very limited with respect to Section 5761.

"Both the Fourth Amendment of the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution protect citizens from unreasonable, searches and seizures." *Commonwealth v. Cook,* 558 Pa. 50, 53, 735 A.2d 673, 674 (1999). The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

■ U.S. Const. Amend. IV. The Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. Warrantless searches and seizures are therefore unreasonable *per se,* unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement. *In the Interest of N.L.,* 1999 PA Super 237, 739 A.2d 564, 566 (Pa.Super.1999), *appeal denied,* 562 Pa. 672, 753 A.2d 819 (2000) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

As our Court has further reminded:

> The Pennsylvania Supreme Court has been vigilant in the protection of the right to privacy guaranteed by Article I, Section 8 of our state Constitution. On repeated occasions, the Court has admonished that:

>> The seriousness of criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.

> *Commonwealth v. Polo,* 563 Pa. 218, 226, 759 A.2d 372 [376 (2000) ] (quoting *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 775–76 (Pa.1996)).

*Commonwealth v. Beasley,* 2000 PA Super 315, 761 A.2d 621, 624 (Pa.Super.2000), *appeal denied,* 565 Pa. 662, 775 A.2d 801 (2001).

*Commonwealth v. Ayala,* 791 A.2d 1202, 1207–1208 (Pa.Super.2002).

In *Jones, supra,* the defendant was under suspicion of trafficking drugs and became the target of a joint investigation by the FBI and District of Columbia Metropolitan Police Department. The Government applied to the United States District Court for the District of Columbia for a warrant authorizing the use of an electronic tracking device on the vehicle registered to Jones's wife. *Jones,* 132 S.Ct. at 948. The district court issued a warrant, authorizing installation of the device in the District of Columbia and within ten days.

> On the 11th day, and not in the District of Columbia but in Maryland, agents installed a GPS tracking device on the undercarriage of the Jeep while it was parked in a public parking lot. Over the next 28 days, the Government used the device to track the vehicle's movements, and once had to replace the device's battery when the vehicle was parked in a different public lot in Maryland. By means of signals from multiple satellites, the device established the vehicle's location within 50 to 100 feet, and communicated that location by cellular phone to a Government computer. It relayed more than 2,000 pages of data over the 4–week period.

*Id.* (footnote omitted). The defendant filed a motion to suppress, which the district court granted in part, suppressing data obtained while the vehicle was parked in the garage adjoining Jones's residence. With respect to the remaining evidence, the court found that Jones did not have a reasonable expectation of privacy while traveling in an automobile on public thoroughfares. *Id.* The case proceeded to trial and the jury convicted Jones of multiple drug-related offenses. The United States Court of Appeals for the District of Columbia reversed the conviction, concluding that the admission of the evidence obtained by warrantless use of a GPS device violated the Fourth Amendment. *Id.* at 949.

The Supreme Court of the United States granted *certiorari* to review the matter.[5] In its analysis, the Court stated:

> It is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a "search" within the meaning of the Fourth Amendment when it was adopted.
>
> . . . .
>
> The text of the Fourth Amendment reflects its close connection to property, since otherwise it would have referred simply to "the right of the people to be secure against unreasonable searches and seizures"; the phrase "in their persons, houses, papers, and effects" would have been superfluous.

*Id.*

In applying a "common-law trespass" or "exclusively property-based" approach,[6] the Court noted it is well-established that a vehicle constitutes an "effect" under the Fourth Amendment and, therefore, held "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Id.* (footnote omitted; emphasis added).

Although the Government urged the Supreme Court to use the more recent "rea-

---

5. Justice Scalia delivered the opinion of the Supreme Court, which Chief Justice Roberts and Justices Kennedy, Thomas, and Sotomayor joined. Justice Sotomayor also filed a concurring opinion. Justice Alito filed a con-curring opinion, which Justices Ginsburg, Breyer, and Kagan joined.

6. *Id.* at 949–950.

sonable expectation of privacy" analysis, as set forth in Justice Harlan's concurrence in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),[7] the *Jones* Court explained that "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test." *Jones*, 132 S.Ct. at 952 (emphasis in original).[8] The Supreme Court concluded the Government committed a trespass by attaching the GPS device to the defendant's car and such action constituted a search under the Fourth Amendment.[9]

Despite this holding, the *Jones* Court did not address whether the government must obtain a warrant to install and use a GPS tracking device, and if not, what level of suspicion is required, reasonable suspicion or probable cause.[10] This has created a variance among the federal district courts.

■ Some courts[11] have interpreted *Jones* to stand for the implicit proposition that the warrantless application and monitoring of a GPS device on a defendant's car is *per se* unreasonable. *See United States v. Lujan*, No. 1:11CR11–SA, 2012 WL 2861546, at *1–2, 2012 U.S. Dist. LEXIS 95804, at *4 (N.D.Miss. July 11, 2012); *United States v. Oladosu*, No. 10–056–01 S, 887 F.Supp.2d 437, 438–39 (D.R.I.2012).[12] Other district courts have

---

7. Justice Harlan stated that a person's Fourth Amendment rights are violated when the government intrudes upon a person's "reasonable expectation of privacy." *Id.* at 360, 88 S.Ct. 507. *See also United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) (holding that a person traveling in an automobile on public thoroughfares had no reasonable expectation of privacy in his movements and therefore, the monitoring of beeper signals to determine the vehicle's location did not violate the Fourth Amendment).

8. The Court further explained that "[s]ituations involving merely the transmission of electronic signals without trespass would remain subject to *Katz* analysis." *Id.* at 953.

9. In Justice Sotomayor's concurrence, she agreed with the majority's trespass theory but also wrote separately to state that the GPS monitoring violated the defendant's reasonable expectation of privacy and these interests will need to be further examined. *Id.* at 954–956 (Sotomayor, J., concurring). In the second concurring opinion, Justice Alito, joined by the four remaining justices, found the court's use of 18th-century tort law to be antiquated and opined that the case required one "to apply the Fourth Amendment's prohibition of unreasonable searches and seizures to a 21st-century surveillance technique." *Id.* at 957. Applying the "reasonable expectation of privacy" approach as set forth in *Katz, supra,* Justice Alito concluded "the lengthy monitoring that occurred in this case consti-

tuted a search under the Fourth Amendment." *Jones*, 132 S.Ct. at 964.

10. The Court determined the Government waived the alternative argument that "that even if the attachment and use of the device was a search, it was reasonable-and thus lawful-under the Fourth Amendment because [the] 'officers had reasonable suspicion, and indeed probable cause, to believe that [Jones] was a leader in a large-scale cocaine distribution conspiracy.' " *Id.* at 954 (citation omitted).

11. We note "decisions of the federal district courts ... are not binding on Pennsylvania courts, even when a federal question is involved." *Kubik v. Route 252, Inc.*, 762 A.2d 1119, 1124 (Pa.Super.2000) (citation omitted). Nevertheless, these decisions are persuasive authority and helpful in our review of the issues presented.

12. We note one federal district court, for example, has rejected this analysis. *See United States v. Guyton*, No. 11–271–H(3), 2013 WL 55837, at *3 n. 6, 2013 U.S. Dist. LEXIS 817, at *12 n. 6 (E.D.La. Jan. 3, 2013) ("Other courts, however, erroneously assume (in this Court's opinion) that the warrantless placement and use of a GPS tracker on a suspect's vehicle is *per se* unreasonable under *Jones*."). It did not address the warrant and probable cause/reasonable suspicion arguments but rather, held that the good faith exception to the exclusionary rules applied notwithstanding the absence of express appellate prece-

acknowledged that this issue has been left unresolved. *See United States v. Ortiz,* 878 F.Supp.2d 515, 526–27 (E.D.Pa.2012); *United States v. Lopez,* 895 F.Supp.2d 592, 602–04 (D.Del.2012); *United States v. Rose,* —— F.Supp.2d ——, —— – ——, 2012 WL 4215868, *2–3 (D.Mass.2012).

The United States Court for the Eastern District of Pennsylvania, in *United States v. Ortiz,* 878 F.Supp.2d 515 (E.D.Pa. 2012), analyzed whether the attachment and monitoring of a GPS device, in the absence of a warrant, would pass Fourth Amendment scrutiny if supported by reasonable suspicion or probable cause. *Ortiz,* 878 F.Supp.2d at 526–27, 527–34.

There, federal agents received information from a confidential informant that the defendant and his associates were engaged in a large-scale drug operation. With respect to the defendant, the confidential informant told the police that the defendant was responsible for picking up drug proceeds and delivering cocaine and that he drove a blue pickup truck. Without obtaining a warrant or order, the agents placed a tracking device on the undercarriage of the defendant's truck and monitored his activity for several months. The defendant was eventually arrested and charged with offenses relating to the drug activity.

In ruling on the defendant's motion to suppress, the *Ortiz* court noted:

> The Fourth Amendment only protects against searches or seizures that are unreasonable, and "[w]hat is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (citing *New Jersey v. T.L.O.,* 469 U.S. 325, 337–42,

105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "[T]he reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." *Id.*

*Ortiz,* 878 F.Supp.2d at 528 (footnote omitted).

In applying the balancing or reasonableness test, the district court found the use of the GPS device constituted "a significant intrusion" on an individual's privacy rights. *Id.* at 532. Moreover, the court decided the government did not identify "any legitimate law enforcement need to use such devices beyond 'the normal need for law enforcement.' " *Id.* at 533–34 (citation omitted). Therefore, the district court concluded "that balancing the intrusion on an individual's Fourth Amendment interests occasioned by GPS installation and monitoring with the legitimate government interests in doing so does not justify an exception to the warrant-and-probable-cause requirement in run-of-the-mill law enforcement situations." *Id.* at 530.

Turning to the present matter, the trial court interpreted *Jones* under the *"per se* unreasonableness" analysis and found that both probable cause and a warrant were necessary in order for an investigating officer to place a GPS device on a suspect's vehicle. *See* Trial Court Opinion, 4/3/2012, at 3.[13]

dent. *See also Rose, supra; United States v.*

*Baez,* 878 F.Supp.2d 288 (D.Mass.2012).

**652**

We agree with the trial court and the parties that *Jones* is controlling and that the attachment and monitoring of a GPS tracking device to Burgos's car constituted a "search" under the Fourth Amendment.[14] Furthermore, whether we apply the *per se* unreasonableness standard, as provided in *Lujan* and *Oladosu*, or the balancing test in *Ortiz*, we are compelled to conclude that in order for the police to attach and monitor a GPS tracking device to an individual's vehicle in Pennsylvania, the police must have probable cause. Therefore, the trial court, here, was correct in finding that the officers needed probable cause to install and monitor the GPS tracker to the Burgos's car.

With respect to the warrant requirement, it bears reiterating that in *Jones*, the law enforcement officers did obtain a warrant but it was no longer valid as it had expired one day earlier and police were monitoring the vehicle outside the permitted area. Moreover, in *Ortiz*, the federal agents did not obtain a warrant or court order prior to attaching a GPS tracker for a substantial period of time. Therefore, these cases are distinguishable from the present matter because a valid warrant or order was not before those courts.

Here, the police officers obtained a court-authorized order, pursuant to Section 5761, prior to attaching the GPS device on Burgos's vehicle.

Section 5761 provides:

§ 5761. Mobile tracking devices. [Effective until December 24, 2012]

(a) *Authority to issue.*—Orders for the installation and use of mobile tracking devices may be issued by a court of common pleas.

(b) *Jurisdiction.*—Orders permitted by this section may authorize the use of mobile tracking devices within the jurisdiction of the court of common pleas, and outside that jurisdiction, if the device is installed within the jurisdiction of the court of common pleas.

(c) *Standard for issuance of order.*—An order authorizing the use of one or more mobile tracking devices may be issued to an investigative or law enforcement officer by the court of common pleas upon written application. Each application shall be by written affidavit, signed and sworn to or affirmed before the court of common pleas. The affidavit shall:

(1) state the name and department, agency or address of the affiant;

(2) identify the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed, and the names of the owners or possessors of the vehicles, containers or items;

(3) state the jurisdictional area in which the vehicles, containers or items are expected to be found; and

(4) provide a statement setting forth all facts and circumstances which provide the applicant with a reasonable suspicion that criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity.

(d) *Notice.*—The court of common pleas shall be notified in writing within 72 hours of the time the mobile tracking device has been activated in place on or within the vehicles, containers or items.

---

13. *See* Trial Court Opinion, 4/3/2012, at 3.

14. We note that the holding in *Jones* is limited to Fourth Amendment jurisprudence and does not address Article 1, Section 8 of the Pennsylvania Constitution.

(e) *Term of authorization.*—Authorization by the court of common pleas for the use of the mobile tracking device may continue for a period of 90 days from the placement of the device. An extension for an additional 90 days may be granted upon good cause shown. ·

(f) *Removal of device.*—Wherever practicable, the mobile tracking device shall be removed after the authorization period expires. If removal is not practicable, monitoring of the mobile tracking device shall cease at the expiration of the authorization order.

(g) *Movement of device.*—Movement of the tracking device within an area protected by a reasonable expectation of privacy shall not be monitored absent exigent circumstances or an order supported by probable cause that criminal activity has been, is or will be in progress in the protected area and that the use of a mobile tracking device in the protected area will yield information relevant to the investigation of the criminal activity.

18 Pa.C.S. § 5761.[15] It bears remarking that Section 5761 was enacted, and subsequently amended, with procedural safeguards in place that are similar to other sections in the Wiretap Act and certain search warrant requirements under the Pennsylvania Criminal Rules of Procedure. *See* 18 Pa.C.S. §§ 5708–5710, Pa.R.Crim.P. 200, and Pa.R.Crim.P. 203(B).[16]

In its Rule 1925(a) opinion, the court found "all [of] these requirements were met" and "that the information provided established not only reasonable suspicion of criminal activity, but rather the higher standard of probable cause." Trial Court Opinion, 4/3/2012, at 4. Nevertheless, the court determined that based on. *Jones*, Section 5761 was no longer applicable. Moreover, it concluded that the governmental use of mobile tracking devices was now governed by traditional search warrant requirements as set forth in the Pennsylvania Rules of Criminal Procedure 200 *et seq.* In applying those requirements, the court determined that the investigating officers' use of the wiretap order did not comply with several rules.[17]

15. On October 25, 2012, nine months after *Jones* was decided, the Pennsylvania Legislature approved an amendment to Section 5761, which now required the applicant possess "probable cause," instead of "reasonable suspicion," to obtain the GPS tracking order. The amendment became effective on December 25, 2012. As such, it is evident that the Legislature recognized the amendment was necessary for Section 5761 to comply with the *Jones* decision.

16. Specifically, under subsection (a) of Section 5761, law enforcement officers may not install or use a GPS device without the consent or approval by a court of common pleas. Pursuant to subsection (c), the investigating officers must present an application by written affidavit, signed and sworn, to the issuing court. In the affidavit, the officers must identify the vehicles, containers, or items to be searched, list the names or the owners or possessors of the vehicles or containers to be searched, and provide a statement setting

forth the facts and circumstances that provided them with probable cause to believe that "criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity." 18 Pa.C.S. § 5761(c)(4).

17. Specifically, the court found the tracking device was not installed until three days after the authorization was issued, which is outside the two-day period permitted under Pa. R.Crim.P. 205(4)(a). *Id.* at 5. Moreover, the court determined the order could not be considered a valid anticipatory search warrant under Pa.R.Crim.P. 205(4)(b) because the information provided by the confidential informants was general in nature and did not specify any timeframe for Burgos's travels to Michigan or Georgia. *Id.* at 5–6. Likewise, the court stated there was nothing in the information that would establish whether any such trips had already been made during the

*See* Trial Court Opinion, 4/3/2012, 5–7. Consequently, the court stated: "For the foregoing reasons, [it] conclude[s], with extreme reluctance, that the documents upon which the tracking of [Burgos]'s vehicle was grounded and the manner and the timing of the execution falls short of what we read *Jones* to require." *Id.* at 7. We disagree with the trial court's determination.

██ With respect to the enactment of the Wiretap Act, the Pennsylvania Legislature has identified certain circumstances where judicial authorization of the interception of wire, electronic or oral communications is permissible. *See* 18 Pa.C.S. § 5708.[18] "The focus and purpose of the [Wiretap Act] is the protection of privacy." *Commonwealth v. Prisk,* 13 A.3d 526, 530 (Pa.Super.2011) (citation and quotation marks omitted). Therefore, "its provisions are strictly construed." *Commonwealth v. Baumhammers,* 599 Pa. 1, 960 A.2d 59, 79 (2008), cert. denied, 558 U.S. 821, 130 S.Ct. 104, 175 L.Ed.2d 31 (2009). Moreover,

> [c]onsistent with the limitations imposed by the Wiretap Act and its statutory exclusionary rule, our Supreme Court has recognized that the practices it governs are inherently illegal and may be carried on by law enforcement agents only within closely circumscribed parameters. *See Boettger v. Loverro,* 521 Pa. 366, 555 A.2d 1234, 1236–37 (Pa.1989). The following excerpt is illustrative:
>
> > Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of

permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivative fruits may be used.

> > [*Commonwealth v.*] *Cruttenden,* 976 A.2d [1176] at 1179 [ (Pa.Super.1269) ] (quoting *Boettger,* 555 A.2d at 1236–37 (emphasis in *Boettger* )).

*Commonwealth v. Rosa,* 21 A.3d 1264, 1269 n. 1 (Pa.Super.2011).

In *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *aff'd,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), the Pennsylvania Supreme Court explained the necessity of the Wiretap Act as follows: "[T]he current electronic surveillance statute strikes a balance between citizens' legitimate expectation of privacy and the needs of law enforcement officials to combat crime. In this regard the General Assembly has provided safeguards to protect the liberties of the citizens of the Commonwealth." *Id.* at 86. Moreover, in *Commonwealth v. Vitale,* 445 Pa.Super. 43, 664 A.2d 999 (1995), *appeal denied,* 544 Pa. 607, 674 A.2d 1071 (1996), a panel of this Court noted that general investigative measures, such as undercover infiltration, surveillance, execution of a search warrant, telephone records, and pen registers, "were ultimately inadequate [as a] result of the clandestine nature of co-defendants' activities [regarding illegal drug activity]." *Id.* at 1004. The Court stated it was "convinced that the wiretaps were necessary to maintain the efficacy and integrity of the

---

month in question or when it could be anticipated that another such trip might begin. *Id.* at 6.

18. "Pennsylvania's Wiretap Act is generally modeled after the federal analogue, 18 U.S.C. §§ 2510–2520." *Commonwealth v. Spangler,* 570 Pa. 226, 809 A.2d 234, 237 (2002) (internal citations omitted).

investigation, and were lawfully employed." *Id.* at 1005.

It is important to note that the constitutionality of the Wiretap Act has been upheld and found not to violate an individual's right of privacy. *See Commonwealth v. Doty,* 345 Pa.Super. 374, 498 A.2d 870, 876 (1985) (concluding the Wiretap Act was constitutional where police placed a tap on a telephone that served the defendants' residence).[19] Furthermore, neither the Commonwealth nor Burgos has challenged the constitutionality of the Wiretap Act or specifically, Section 5761.

 Therefore, in keeping the purpose and functionality of the Wiretap Act in mind, it is evident that these wiretap orders serve as the functional equivalent of traditional search warrants. It merits emphasis that these orders are statutorily prescribed orders, approved and issued by the judiciary, which allow an investigating officer to conduct a search *via* interception of an individual and his or her property and effects, upon a showing of the requisite level of suspicion. Accordingly, we are constrained to conclude the trial court erred in its conclusion of law that Section 5761 no longer governs and that Pennsylvania Rules of Criminal Procedure now apply to the use of GPS devices by investigating officers.[20]

 We must now address whether the wiretap order was supported by probable cause under Section 5761. In this regard, we are guided by the following: "The standard for determining whether probable cause existed for an order authorizing interception of telephone communications is the same as that used to determine probable cause for search warrants." *Commonwealth v. Birdseye,* 432 Pa.Super. 167, 637 A.2d 1036, 1041 (1994), *aff'd,* 543 Pa. 251, 670 A.2d 1124 (1996).[21] The question of whether probable cause exists for a wiretap

> must be adjudged by the totality of the circumstances. Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court ... the task of [the trial court] is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Thus, the totality of the circumstances test permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip[.]

*Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537–38 (2001). "An affidavit of probable cause to support a search warrant does not require a prima facie showing of criminal activity on the part of the occupants of the premises to be searched." *Commonwealth v. Gutierrez,* 969 A.2d 584, 588 (Pa.Super.2009) (quotation and quotation marks omitted), appeal denied, 603 Pa. 690, 983 A.2d 726 (2009). Moreover, "[a] reviewing court may not conduct a de

---

**19.** The Court noted: "It is well settled that a strong presumption of constitutionality attaches to statutes duly enacted by the legislature." *Id.*

**20.** Moreover, after reviewing *Jones* and its progeny, we see nothing that would support the notion that a GPS device placed onto a vehicle in full compliance with Section 5761,

as amended, offends the Fourth Amendment or Article 1, Section 8 of the Pennsylvania Constitution.

**21.** Because the case law regarding GPS devices is limited, we are guided by the law regarding its counterpart, telephone interceptions.

novo review of the issuing authority's probable cause determination. The role of both the reviewing court and the appellate court is confined to determining whether there is substantial evidence in the record supporting the decision to issue the warrant." *Commonwealth v. Wallace*, 953 A.2d 1259, 1262 (Pa.Super.2008) (quotation and quotation marks omitted), *reversed on other grounds*, —— Pa. ——, 42 A.3d 1040 (2012). "We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause." *Commonwealth v. Rogers*, 419 Pa.Super. 122, 615 A.2d 55, 62 (1992).

■ Turning to the present matter, in the trial court's original order, which denied Burgos's suppression motion, the court found there **was** probable cause to support the officer's request for a wiretap order. Specifically, the court explained:

Probable cause determinations are now governed, both under Federal law and the jurisprudence of this Commonwealth, as being judged by "the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527] (1983); *Commonwealth v. Gray*, 509 Pa. [476], 479 [503 A.2d 921] (1985). We are easily satisfied that the standard has been met. Information provided by the informants was corroborated in a number of ways, including police surveillance, as well as information gathered in previously authorized wiretaps. Additionally, the informants were interviewed separately yet provided the same information, and having been charged themselves with related offenses, made statements against their own penal interests. The recent holding by our Supreme Court in the case of *Commonwealth v. Clark* [611 Pa. 601], 28 A.3rd 1284 (2011) buttresses this conclusion, especially with regard to the reliability of the information provided by C[S] # 1 and CS # 2.

Further, the information provided established a long existing pattern of narcotics-obtaining trips on the part of [Burgos], taking place on a regular basis over a period of many months, if not years. Thus, the information cannot be seen as being stale. Finally, the information was analyzed by law enforcement officers with many years' experience in the investigation of narcotics trafficking, who were familiar with the methods used by traffickers not only to obtain and dispose of their product, but to conceal their activities from notice by law enforcement authorities.

It appearing, therefore, that all criteria set forth under [Section] 5761 have been met, and that the information is detailed enough to establish probable cause, . . . we conclude that the defense argument lacks merit, and that the use of the mobile tracking device, including monitoring [Burgos]'s movements outside the Commonwealth, are lawful.

Trial Court Opinion, 12/14/2011, at 6. After conducting an independent review of the investigating officers' affidavit of probable cause, we agree with the court's original disposition that the facts established the requisite probable cause to support the issuance of the order authorizing the mobile tracking device.

Moreover, we also conclude the court erred in suppressing the remaining evidence as fruit of the poisonous tree based on our determination that the information obtained from the Section 5761 order and the confidential informants constituted valid probable cause for the subsequent search of Burgos's car and the Allentown residence. *See* Trial Court Opinion, 4/3/2012, at 7–8.

 In light of our disposition, we need not reach the Commonwealth's arguments (1) that the court erred in suppressing the evidence seized from the 630 Mohr Street residence because Burgos did not establish a privacy interest in the home and (2) that the good faith exception to the exclusionary rule applies to the present matter.[22]

Based on our review of the record and the reasons set forth above, we conclude that the trial court erred in granting the motion to suppress all the evidence from the use of a mobile tracking device on Burgos's car, the stop and search of Burgos's car, and the search of the premises located at 630 North Mohr Street, Allentown, Pennsylvania. Accordingly, we reverse and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

SHOGAN, J., files a Concurring Opinion.

CONCURRING OPINION BY SHOGAN, J.:

I concur with the well-reasoned Majority Opinion in all respects, save for the statement in *dicta* where the Majority posits that the good faith exception to the exclusionary rule does not exist in Pennsylvania. Because I believe that the circumstances in the instant case are distinct from prior cases striking down the good faith exception, I respectfully offer this Concurring Opinion.

The Majority cites to *Commonwealth v. Antoszyk*, 614 Pa. 539, 38 A.3d 816 (2012), which cites *Commonwealth v. Edmunds*, 526 Pa. 374, 399, 586 A.2d 887, 899 (1991), for the proposition that Pennsylvania does not recognize the good faith exception. Maj. Op. at 657 fn. 22. In *Edmunds*, the Pennsylvania Supreme Court rejected the good faith exception announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Edmunds*, 526 Pa. at 399, 586 A.2d at 899.

In *Leon*, the United States Supreme Court held that when law enforcement act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant. *Leon*, 468 U.S. at 922, 104 S.Ct. 3405. Here, however, we are not faced with a search warrant that was subsequently determined to be invalid due to errant facts or missing information. Rather, the officers in the instant case relied on the law as it existed at the time of the search and the law itself was subsequently altered.

Because information in a search warrant is always based on statements, credibility determinations, and subject to human error, proceeding pursuant to information underlying a warrant is distinct from proceeding under the law as it exists at the time of the search. Thus, I believe that the good faith exception may have application where the officers proceeded in good faith under the law as it existed at the time of the search, but where the law subsequently was altered. Accordingly, I concur in the result.

---

22. Nevertheless, we recognize that the good faith exception does not exist in Pennsylvania.

*See Commonwealth v. Antoszyk*, 614 Pa. 539, 38 A.3d 816, 818 (2012).