J-A29016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| COLIN LINNEN | |
| Appellee | No. 637 WDA 2013 |

Appeal from the Order entered March 19, 2013,
in the Court of Common Pleas of Allegheny County,
Criminal Division, at No(s): CP-02-CR-0016899-2008

BEFORE: BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.: **FILED NOVEMBER 06, 2014**

The Commonwealth appeals from the order entered by the Allegheny County Court of Common Pleas granting the suppression motion of Appellee, Colin Linnen ("Linnen"). We are constrained to reverse and remand.

The facts may be summarized as follows: On September 10, 2008, Officers Ian Lucas and Ryan Coll of the Allegheny County Housing Authority Police were on patrol in Clairton, Pennsylvania, at around 10:00 a.m., when they drove past Linnen, who was standing in front of Building 17 of the Millvue Acres housing development. N.T., 07/02/12, at 4-6. Officer Lucas was familiar with Linnen from previous encounters with him. *Id*. The officers turned their police vehicle around and approached Linnen, who had begun to walk away. *Id*. at 4-6, 15. The officers exited their police vehicle

_____
* Retired Senior Judge assigned to Superior Court.

and approached Linnen, who had stopped walking and was standing with his hands in his pockets. *Id*. at 7, 16-17. When the officers were approximately five to ten yards from Linnen, Officer Lucas said to Linnen "What is up, Colin" to which Linnen responded, "What is up, Lucas." *Id*. at 7. Officer Lucas asked Linnen what he was doing at that location since Linnen did not live in the area, and Linnen responded that he was visiting his family. *Id*. Officer Lucas noticed that Linnen was nervous, and that he kept his hands in his pockets during the encounter. *Id*. at 8. Officer Lucas then said to Linnen, "Colin, the last time I dealt with you, you had a little bit of weed on you. Got anything illegal now?", to which Linnen did not respond, although he became tense, put his head down, and clenched his fists inside his pockets. *Id*. Officer Lucas again asked Linnen if he had anything illegal on him, to which Linnen responded "yeah, I got a little bit of weed" and pulled a baggie out of his pocket, and handed it to the officer. *Id*. at 9. Officer Lucas removed his handcuffs from his belt and told Linnen that he was under arrest, whereupon Linnen fled. *Id*. at 8-9. Linnen was eventually apprehended, and after a struggle with police, he was taken into custody. *Id*. at 10. Once in custody, Linnen was subjected to a search which yielded 11.34 grams of crack cocaine and $309 in U.S. currency. *Id*. Linnen was charged with possession with intent to deliver, possession, resisting arrest, and disorderly conduct.

On June 6, 2012, Linnen filed a pre-trial suppression motion. Following a hearing on July 2, 2012, the trial court granted Linnen's motion. This appeal followed.[1]

The Commonwealth raises the following issues on appeal:

I.  Whether the [trial] court erred in finding that the interaction between [Linnen] and the police constituted an investigatory detention rather than a mere encounter?

II. Whether the [trial court] erred in finding that *Miranda* warnings were required during a non-custodial encounter on a public walkway which lasted less than a minute?

Commonwealth Brief at 4.

When reviewing a Commonwealth appeal from the grant of a suppression motion, "[w]e begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings." ***Commonwealth v. Burgos***, 64 A.3d 641 (Pa. Super. 2013) *quoting* ***Commonwealth v. Powell***, 994 A.2d 1096, 1101 (Pa. Super. 2010) (citations omitted).

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's

_____

[1] The Commonwealth certified in its notice of appeal that the trial court's order "would terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). "We are bound by the suppression court's factual findings, if supported by the record; however, the question presented—whether a seizure occurred—is a pure question of law subject to plenary review." *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014).

Here, the Commonwealth challenges the trial court's determination that Officer Lucas' and Officer Coll's initial interaction with Linnen constituted an investigative detention; the Commonwealth contends that the initial interaction with Linnen was a mere encounter, "raising no Fourth Amendment concerns." Commonwealth Brief at 11-17.

In Pennsylvania, there are three categories of interaction between the police and members of the public: 1) mere encounters, which are

characterized by the fact that the suspect has no official compulsion to stop or respond to the police, and which need not be supported by any level of suspicion; 2) investigative detentions, in which suspects are required to stop and submit to a period of detention, but are not subject to such coercive conditions to qualify as an arrest, and which must be supported by reasonable suspicion; and 3) arrests, or custodial detentions, which must be supported by probable cause. ***Commonwealth v. Astillero,*** 39 A.3d 353, 357-358 (Pa. Super. 2012).

> To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime would have thought he was being restrained had he been in the defendant's shoes.

***Commonwealth v. Collins***, 950 A.2d 1041, 1046-1047 (Pa. Super. 2008) *quoting* ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201–1202 (Pa. Super. 2002). ***See also Commonwealth v. Au***, 42 A.3d 1002, 1004 (Pa. 2012).

Officer Lucas testified about his interaction with Linnen as follows:

| Assistant District Attorney: | On the day in question, when you saw [Linnen], what was he doing? |
|---|---|

| | |
|---|---|
| Officer Lucas: | He was standing in front of the 17 building of Marion Circle or Millvue Acres. |
| Assistant District Attorney: | Did you approach him? |
| Officer Lucas: | We turned our marked patrol car around, then we got out of our car, approached him. |
| Assistant District Attorney: | So you approached on foot? |
| Officer Lucas: | Yes, we did. |
| Assistant District Attorney; | And when you walked up to him, what did he do? |
| Officer Lucas: | He was just standing there with his hands in his pockets, just standing there. |

***

| | |
|---|---|
| Officer Lucas: | I said: What is up, Colin. ... He said: what is up, Lucas. ... I said: What are you doing down here, you don't live here. |
| Assistant District Attorney: | What was his response? |
| Officer Lucas: | He was visiting somebody. |
| Assistant District Attorney: | After he said that, did you notice anything else about him? |
| Officer Lucas: | He was nervous at myself and Officer Coll's presence. You could tell by his body language. He kept his hands in his pockets the whole time. Just kind of a rigidness about him. |
| Assistant District Attorney: | Did you say anything else to him? |

Officer Lucas:      I said: Colin, the last time I dealt with you, you had a little bit of weed on you. Got anything illegal now?

              ***

              He didn't really say anything. He just put his head down and clenched his fists. I could see him tense up his hands still in his pockets.

              ***

              I repeated. I didn't say weed this time. I said, you got any – like due to his hesitation, flinching I mean, that hesitation to me in my years of experience, he was trying to formulate something, so I quickly asked him again, I said, got anything illegal on you?

Assistant District Attorney:   Did he respond?

Officer Lucas:      Yeah, I got a little bit of weed. He immediately pulled out a clear plastic bag and handed it to me.

              ***

              I looked at [it] real quick, through my training and experience immediately recognized it to be marijuana. I put it in my uniform pocket. I said – grabbed my handcuffs off my belt I said you're under arrest.

              ***

              [Linnen] immediately fled on foot. ... He fought us after we caught up to him.

| Assistant District Attorney: | But you were finally able to take him into custody? |
|---|---|
| Officer Lucas: | Yes, sir. |

N.T., 7/2/12, at 5-8.

The trial court concluded that, under the totality of the circumstances, Officer Lucas and Coll's interaction with Linnen constituted a seizure warranting the suppression of all evidence. The trial court explained:

> [T]he incident occurred between 10:00 and 11:00 a.m. It occurred in a residential area and there was no testimony about it being a high crime area. [Linnen] had begun walking from the area of the initial encounter when the police first exited their vehicle and approached [Linnen]. The officer opined that [Linnen] appeared nervous. The officer knew [Linnen] had a baby with a woman from the neighborhood, that [Linnen] was not barred from the housing unit ... and that he was lawfully on the premises to visit. Both officers were only 3-4 feet from [Linnen] when they questioned him. [Linnen] was not asked by police to remove his hands from his pockets and was never asked to remove his hands for officer's safety. [Linnen] was not advised that he had a right to remain silent. The testimony was devoid of any observation of criminal activity afoot as police approached. The [trial] court disagreed that the event was a mere encounter. Additionally, there was no legal basis for the police to conduct an investigative detention, as there was no reasonable suspicion to confront and question [Linnen]. No reasonable person would have felt free to leave or to ignore the police officer's questioning. Under the totality of the circumstances, the proximity of the officers to [Linnen], and the questions asked by the officer, [the circumstances] amounted to an investigative detention where no reasonable suspicion existed. The [trial court] found that [Linnen] was effectively detained and that any evidence seized as a result of the unlawful detention was properly excluded.

Trial Court Opinion, 12/23/13, at 3-4.

After careful review, we disagree, and conclude that the officers' initial interaction with Linnen constituted a mere encounter. "To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved." **Collins**, 950 A.2d at 1046-1047. "To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred." **Commonwealth v. Strickler**, 757 A.2d 884, 889–90 (Pa. 2000) (internal citations and footnotes omitted). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might by compelled." **Commonwealth v. McClease**, 750 A.2d 320, 324–25 (Pa. Super. 2000) *quoting* **United States v. Mendenhall**, 446

U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Moreover, "[The Pennsylvania Supreme Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification." *Lyles*, 97 A.3d at 303. *See also Commonwealth v. Coleman*, 19 A.3d 1111, 1116 (Pa. Super. 2011) ("the approach of a police officer followed by questioning does not constitute a seizure").

Here, there is no evidence that when the officers turned their vehicle around and approached Linnen on foot, they made any show of physical force or display of authority. Officer Lucas testified that during his interaction with Linnen, although he had a weapon, it was in its holster and not drawn, and that neither he nor Officer Coll blocked Linnen or otherwise prevented him from leaving or told him that he was not free to leave. N.T., 6/2/12, at 8. Although Linnen initially walked away from the officers, the officers did not aggressively or forcefully pursue him. Rather, the record indicates that the officers "just kept walking until [Linnen] turned around at looked at us." *Id*. at 17. Moreover, Officer Lucas testified that when Linnen walked away, he "did not call to [Linnen]" or demand that Linnen stop. *Id*. There is nothing in the record to indicate that the police officers exhibited any overt show of force or physical control over Linnen. To the contrary, the record indicates that when the officers approached Linnen, they did not restrain his movements, block him from leaving, or tell Linnen that he could

- 10 -

not leave, and Officer Lucas testified that during the interaction, his tone was "amicable." *Id*. at 8, 26. Additionally, the officers did not direct Linnen to empty his pockets, but only asked if he had anything illegal on him. *Id*. at 7-8. Under the totality of these circumstances, as well as current case law, we must conclude the police officers did not effectuate a seizure of Linnen, and that their interaction with him constituted a mere encounter that did not need to be supported by any level of suspicion.[2] *See Lyles*, 97 A.3d 298, 305-306 (where an officer sees men sitting at a vacant building, there is no impropriety in the officers approaching the men, nor in asking their reason for loitering there, and the officer's request for identification does not elevate the interaction from a mere encounter to an investigative detention); *Coleman*, 19 A.3d at 1116 (where police officer approached the appellant and asked him if he had a gun, that interaction constituted a mere encounter that required no level of suspicion to be constitutionally valid); *Commonwealth v. Guess*, 53 A.3d 895 (Pa. Super. 2012) (where police

_____

[2] Because the interaction constituted a mere encounter, Linnen was not entitled to receive *Miranda* warnings. *See Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012) ("*Miranda* rights are required only prior to a custodial interrogation. Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way.' Furthermore, volunteered or spontaneous utterances by an individual are admissible without the administration of Miranda warnings. When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression.... Interrogation is police conduct 'calculated to, expected to, or likely to evoke admission.'")

officer approached defendant without making any verbal command for defendant to stop and without impeding his movement, but merely identified himself and asked if defendant was willing to speak with him, a reasonable person would have felt free to terminate the encounter during the initial approach and questioning).

Following the officers' initial approach and conversation with Linnen, when Linnen voluntarily produced marijuana from his pocket and then fled, the officers' subsequent pursuit and arrest of Linnen was supported by probable cause in light of Linnen's provision of illegal drugs to the officers, and his immediate flight when the officers attempted to handcuff him. We conclude that the officers' interaction with Linnen was supported by the requisite level of suspicion at all stages, and therefore we reverse the trial court's grant of Linnen's suppression motion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014