## Walker *versus* Bush.

When a person in possession of land sold by the sheriff, makes defence before the justices, that he did not obtain, and does not claim possession under the defendant in the execution, and enters into the recognisance required by the Act of 1836, and the cause is certified into court; this is equivalent to a removal by *certiorari* to a higher court for trial, and the proceedings thereafter are part of the same cause that was begun before the justices; and damages for the wrongful detention are properly included in the verdict, even though notice of such claim be not given.

In such case, a verdict for the plaintiff, for a sum of money, though informal, is necessarily a verdict for the damages for wrongful detention, and involves a finding of the title in his favour; and the proper judgment may be entered thereon.

On the trial of such cause, the defendant is bound to show that he has a title to the possession which he did not obtain under the defendant in the execution, or which he obtained under him before the judgment on which the execution issued.

If he show such title, and it appear that it was obtained by a fraudulent collusion between him and the former owner, for the purpose of defeating the legitimate effect of the sheriff's sale, it will not avail as a defence.

ERROR to the Common Pleas of *Tioga county*.

This was originally a proceeding before two justices of the peace, under the Act of 16th June 1836, by A. C. Bush against Abraham Green and Joseph Walker, to obtain possession of land sold at sheriff's sale. Walker appeared, and made oath that he did not come into possession, and did not claim to hold the land under Abraham Green, the defendant in the execution, but in his own right; and having entered into the recognisance required by the Act of 1836, the case was certified to the Court of Common Pleas. A declaration in ejectment was filed, to which the defendant pleaded "not guilty."

In 1838, the trustees of the estate of William Bingham contracted to sell to Lyman Robinson lot No. 98, of their lands in Tioga county, containing 105 acres, for the sum of $415, payable in yearly instalments, with interest annually. In this contract it was agreed that, if Robinson should assign the contract without the written assent of the vendors, or should leave the premises untenanted for six months, or should fail to pay the instalments and interest as the same fell due, the vendors might enter upon the premises, and Robinson's right should cease and determine.

In 1842, A. C. Bush obtained judgment against Robinson, in the Court of Common Pleas of Tioga county, upon which execution was issued and levied upon the premises in question, and the sheriff sold and conveyed the same to Bush, by deed of the 22d December 1842.

On the 25th January 1843, Bush contracted to sell the premises to Abraham Green, and to convey it to him on payment of the pur-

[Walker *v.* Bush.]

chaser's two judgment notes for $500 and $600. Judgment was entered up on these notes, on the same day; and on one of them, which had been duly revived, execution was issued, and the premises in dispute levied on, and sold by the sheriff to A. C. Bush, for $50. The sheriff's deed was acknowledged on the 19th February 1855, and the plaintiff commenced these proceedings to obtain possession.

On the trial, before WILMOT, P. J., after proving that Robinson went into possession, built a house, and remained there six or seven years; that Abraham Green was next in possession, and remained there over one year; that Joseph Walker, the defendant, was next in after Green, and that it was six months or more after Green went out, before Walker went in; the plaintiff offered to prove the annual rents and profits of the land. This was objected to by the defendant, but the learned judge admitted the evidence, and sealed a bill of exceptions.

It was then shown, on behalf of the defendant, by the testimony of Abraham Green, that after living upon the place for over a year, and finding he could not pay the Bingham estate the money due on the Robinson contract, he gave up that contract to Mr. Clymer, the agent of the trustees, and quitted the possession of the property. That afterwards, one Barber lived on the property for a month or two; that the witness went away to Canada, and on his return Joseph Walker was in possession.

On the 22d July 1844, the trustees of the Bingham estate, by articles of agreement, sold the premises to Peter Green, the brother of Abraham Green, and subsequently conveyed it to him by deed. And on the 29th May 1846, Peter Green conveyed to Joseph Walker.

The defendant's counsel requested the court below to charge the jury as follows:—

1. That the only question to be decided in this suit is, whether Joseph Walker went into possession of the property in question, or claims to hold the same under Abraham Green.

2. That the uncontroverted evidence of Abraham Green establishes the fact that Walker did not go into possession nor claim to hold the land under him.

3. That Abraham Green having left the possession of the property, and Peter Green having purchased the land of the trustees of the Bingham estate, and sold the same to Walker, who went into possession under his purchase from Peter Green, the plaintiff cannot recover from him in this mode of proceedings.

4. That there is no evidence that Walker ever knew of the existence of any interest in the land in Abraham Green, and that his purchase from Peter Green, and taking possession under the same, establishes the issue in favour of the defendant.

5. That no recorded title having ever existed in Abraham Green,

VOL. VI.—23

[Walker *v.* Bush.]

and he having left the possession, as testified by himself and Marcus Benedict, the deed to Peter Green from the Bingham trustees without notice, conveyed the full title to him, and the contract from him to Walker, also without notice of any equity in Abraham Green, he claiming under said contract, enables him to hold the land until a better title than his shall be established in an action of ejectment.

The learned judge delivered the following charge to the jury:—

" The proceedings in this case were originally commenced before two justices, under the Act of 1836, to obtain possession of the land in dispute, which had been sold at sheriff's sale as the property of Abraham Green, and purchased in by the plaintiff. The defendant being in possession made the oath prescribed by the statute, and the proceedings were removed into this court. By that oath, he in substance declares that he did not come into possession of the land under Abraham Green, and that he does not claim to hold it by a title derived from him, subsequent to the judgment upon which it was sold, but in his own right, and under a different and independent title. If we understand the defendant's counsel aright, it is claimed that these proceedings must be dismissed, and the plaintiff turned over to his action of ejectment, in case it should be established to the satisfaction of the court and jury, that the defendant did not go into the possession of the land under Green, and does not claim to hold it under him. The court dissent from this. The defendant asserts that he holds a paramount title, one that overrides the right of the plaintiff under the sheriff's deed. The defendant becomes an actor in the court, for the establishment of his paramount title ; and we have to inquire whether he had such a title as, under all the facts in the case, ought in law to defeat the plaintiff in the recovery of the possession. The defendant's title, and the manner in which it was acquired, as well as the circumstances under which he obtained the possession, are all proper subjects of investigation. The inquiry into all the rights of the parties is as broad and full, as it would be in an action of ejectment, except that the plaintiff is confined to his right under the sheriff's deed, and the defendant is not at liberty to set up any title inconsistent with his oath before the justices.

" It is contended that the title relied upon by the defendant is not a different title from that claimed by Abraham Green, and which became vested in the plaintiff by the sheriff's sale, and, therefore, that the defendant cannot set it up to defeat the plaintiff's recovering. By a different title we understand a title not in any way derived under or through the defendant in the execution. Here the legal title was originally in the Bingham estate, and an equity growing out of and connected with that title was in Abraham Green ; and that it was that equity alone that the sheriff sells and that the plaintiff purchased. Although parts of the

[Walker *v.* Bush.]

same title, they are totally distinct and different rights, independent of each other, each subject to liens against the respective owners, the one is conveyed without in the least affecting the other. In the hands of the same owner the equity becomes merged in the legal title, constituting one entire and complete right or title in the hands of different owners. They constitute different and wholly independent rights and titles; and so they are to be regarded in this case. The point of inquiry then is, —Can the defendant avail himself of his legal title, under the evidence in this cause, to protect himself in the possession, or ought he to be compelled to surrender the possession to the plaintiff?

" On the 5th of July 1838, the Bingham estate contracted this land to Lyman Robinson, who went into possession, and improved by clearing some twenty-six acres, and erecting a house. Under this contract, he acquired a substantial and valuable equity in the land. While thus in possession, judgment in favour of the plaintiff was entered against Robinson, on which the land was sold, and a sheriff's deed made to the plaintiff in November 1842. This vested the equitable interest in the plaintiff: that is, the right to the land itself, subject to the payment of the purchase-money.

" On the 25th of January 1843, Bush contracted this land to Abraham Green, and on the same day entered judgments against him to the amount of $1100. Green remained in possession over one year, when he moved off about one hundred rods into another lot and informed the agent of the Bingham estate that he could not pay the purchase-money. On or about this same time (when Abraham Green left the possesion), Peter Green, Abraham's brother, who lived many miles away from the land, entered into a contract with the Bingham estate for the land. It was not competent for that estate thus to divest the equitable right of the plaintiff. The records of this court informed its agent that Robinson's equity had become vested in the plaintiff. Was there collusion in this business between Abraham and Peter Green? Did they well understand each other? In the winter or spring of 1843, Abraham Green went into possession of this land under Bush, the plaintiff; he remained upon it over a year; that is, down to the spring or summer of 1844; he then undertook to surrender the old Robinson contract, not having paid a cent to Bush, and moved off about one hundred rods on another lot, and, July 22d, Peter, his brother stepped in, obtained a new contract from the Bingham estate, and in March 1845, a deed. Was there no understanding between these brothers in this business? If there was an understanding, then Peter Green's possession was collusive and fraudulent as against the right of the plaintiff, and he, if he were a party, would be bound to surrender the possession to the plaintiff. Would Walker under such a state of facts stand in any better position than Peter Green? The court think not. The proceedings were commenced

[Walker *v.* Bush.]

July 1846, and the deed from Peter Green to Walker is dated 29th May 1846. Thus, after Walker had been served with notice to quit, he went and procured the title from his brother-in-law, Peter Green. The whole case looks as if these brothers and brothers-in-law had put their heads together to defraud the plaintiff out of his right. If the jury believe that there was an understanding between Abraham and Peter Green about this business, that Abraham should go out and Peter get the Bingham title, and take the possession, the plaintiff would be entitled to recover. The holder of the legal title, if he found the possession abandoned—really so—might in good faith enter, and being in possession might hold until his purchase-money was paid; but not when he obtained the possession with any purpose of defeating the equitable right of his vendee, or those claiming under him. The records and the sheriff's sale was notice to the parties, of the liens upon and the rights acquired to this equitable interest, under the Robinson contract. If the rents and profits of the lands in the hands of Walker were equal to the balance of purchase-money due on the Robinson contract, then the plaintiff would, in equity, have the whole title, and will be entitled to recover.

"The first point of the defendant has been answered. The court decline to charge as requested in the second point. The evidence of Abraham Green is controverted by the facts and circumstances of the case. We also decline to charge as requested in the remaining points made by the defendant."

To this charge the defendant's counsel excepted. The jury found a verdict for the plaintiff for $339.38; which the court subsequently, on motion of the plaintiff's counsel, amended, so as to read as follows: "We find for the plaintiff the land in dispute, and assess his damages for the detention of the premises at $339.38." The court make the direction on the recollection of the judge trying the cause, that such was the verdict and finding of the jury, and that by mistake the prothonotary failed to record it in full.

The defendant's counsel objected to this amendment.

Judgment having been entered on this verdict, the defendant removed the cause to this court, and here assigned for error: 1. The admission of the evidence of the annual value of the rents and profits of the land in question. 2. The charge of the court below. 3. The amendment of the verdict.

*Elwell,* for the plaintiff in error.

*Maynard,* for the defendant in error.

The opinion of the court was delivered by
LOWRIE, C. J.—1. When a person, in possession of land sold by

the sheriff, makes defence before the justices that he did not obtain, and does not claim the possession of the land under the defendant in the execution, and enters into the recognizance required by the Act of 16th June 1836, §§ 114–118, and the cause is certified into court; this is equivalent to a removal by *certiorari* to a higher court for trial, and all the proceedings thereafter are a part of the same cause that was begun before the justices, and not a new cause; and the damages for wrongful detention are properly included in the verdict, even though notice of such a claim be not given.

2. In such a case a verdict for the plaintiff, for a sum of money, though quite informal, is necessarily a verdict for the damages for wrongful detention, and involves a finding of the title in his favour, and the proper judgment of the law may be entered thereon. For this reason the amendment of the verdict, made by the court, was immaterial, and it would be useless to declare it wrong. Treating it as a nullity, the judgment remains unaffected.

3. On the trial in court, the defendant in such a case is bound to show that he has a title to the possession which he did not obtain under the defendant in the execution on which the sale was made, or which he obtained under him before the judgment on which the execution issued.

4. If he show such a title, and it appear that it was obtained by a fraudulent collusion between him and the former owner for the purpose of defeating the legitimate effect of the sheriff's sale, it will not avail as a defence.

Did this appear? We do not feel very clear that there was sufficient evidence of it; yet the jury were satisfied of the fact, and we cannot say that they proceeded without evidence. The fraud of Abraham Green seems very plain from his own testimony. His surrender of his title; not to Bush, his own vendor and creditor, to whom it was worth $1000 or more, but to the Binghams, the original vendors—was quite dishonest, and it was absurd also; unless it be regarded as a trick in the game by which Bush was to be cheated out of his land. It was right to treat it as a trick. Then his brother Peter's purchase, after the levy on the land under Bush's execution, and the transfer to his brother-in-law, Walker, after the sheriff's sale, and after the commencement of this suit, became very plainly and naturally suspicious, and called for evidence on their side that they were honest purchasers for value paid. There is a singular connection of events here which we suppose a jury of the neighbourhood might understand better than we can.

Judgment affirmed.