J-S67009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MILIK EMIL PINNOCK | : | |
| | : | |
| Appellant | : | No. 900 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 3, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006227-2017

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 18, 2020**

Appellant, Milik Emil Pinnock, appeals from the judgment of sentence entered on May 3, 2018, following his bench trial convictions for possession with the intent to deliver[1] ("PWID") and possession of drug paraphernalia.[2] We affirm.

The trial court accurately summarized the factual and procedural history of this case as follows.

> On October 6, 2017, the Honorable Howard F. Knisely signed an order authorizing installation of a global positioning system (["]GPS["]) mobile tracking device on the Honda Accord owned by Appellant. The application and affidavit presented to Judge Knisely asserted there was probable cause to believe Appellant's vehicle was involved in or connected to criminal activity,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 Pa.C.S.A. § 780-113(30).

[2] 35 Pa.C.S.A. § 780-113 (a)(32).

specifically, the sale of cocaine purchased in Philadelphia[, Pennsylvania] but distributed within Lancaster[, Pennsylvania]. [On October 9, 2017 t]he GPS tracker was installed on the vehicle . . . pursuant to 18 Pa.C.S.A. § 5731. That day, Appellant's vehicle traveled to and from Philadelphia.

On October 10, 2017, at approximately 1:10 p.m., members of the Lancaster County Drug Task Force seized Appellant, searched his vehicle and entered his residence at 541 North Plum Street in the City of Lancaster pursuant to a valid search warrant. During the search of the residence, [d]etectives located approximately 263.34 grams of cocaine, $1,073.00 in U.S. currency, two digital gram scales, sandwich bags, and a gallon size bag and two quart size bags with cocaine residue. The seizure and arrest of Appellant resulted in the Commonwealth obtaining additional controlled substances on his person. Subsequent to his arrest, Appellant was administered his **Miranda**[3] warnings by Detective Jason Zeigler of the Drug Task Force, waived his rights, and ultimately provided a statement admitting the cocaine, paraphernalia and money were his and that he was selling cocaine.

Based upon his incriminating statements and the evidence seized from his residence and person, [the Commonwealth charged] Appellant [] with [PWID] cocaine, and possession of drug paraphernalia[.]

\*\*\*

[Thereafter,] Appellant filed multiple omnibus pre-trial motions. … Specifically, Appellant moved to suppress the controlled substances and paraphernalia seized from his person and residence[.] [The trial court held a suppression hearing on July 13, 2018 to address Appellant's various claims and ultimately denied Appellant's motion to suppress on October 2, 2018.]

On January 25, 2019, Appellant appeared before the [court] for a stipulated bench trial. [That same day, the trial court found Appellant guilty of both charges].

\*\*\*

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[Appellant was sentenced on May 3, 2019, during which he] received a sentence of 7 to 14 years' incarceration in a state correctional institution for the PWID conviction. [The court only imposed costs for the possession of drug paraphernalia conviction. This timely appeal followed.[4]]

Trial Court Opinion, 6/28/19, at 1-5 (footnotes added) (footnotes omitted).

Appellant raises the following issues on appeal:

I.  Did the affidavit of probable cause in support of the authorization for the October 6, 2017 court order authorizing installation of the [GPS] placed on [Appellant's] vehicle provide insufficient facts to establish probable cause to believe that the vehicle was involved in criminal activity?

II. Did the affidavit of probable cause for the [search] warrant issued on October 10, 2017[] provide insufficient facts to establish probable cause for the issuing authority to have a basis to believe that [Appellant's] residence would contain evidence of drug activity?

III. Did the affidavit of probable cause contain deliberate misstatements and omissions that were material to the finding of probable cause to issue the October 10, 2017 search warrant?

IV. Without the GPS tracking device data and the information [tainted] by [] deliberate and material misstatements contained in the affidavit of probable cause for the October 10, 2017 search warrant, would the remaining portions of the affidavit be incapable of establishing probable cause to believe [that] evidence of drug activity would be found in [Appellant's] residence[?]

Appellant's Brief at 5-6.

_____

[4] Appellant filed a notice of appeal on June 3, 2019. On June 5, 2019, the trial court entered an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 28, 2019.

J-S67009-19

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable David L. Ashworth. We conclude that Appellant is not entitled to relief in this case. Specifically, we agree that the trial court did not err in denying Appellant's motion to suppress because both the affidavit in support of the order authorizing installation of a GPS on Appellant's vehicle and the affidavit in support of the October 10, 2017 search warrant were supported by probable cause. We also note that, based upon our review, we are satisfied that the affidavit of probable cause did not contain material omissions that undermined or invalidated the October 10, 2017 search warrant.[5] Because Judge Ashworth's June 28, 2019 opinion adequately and accurately disposes of Appellant's issues on appeal, we adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attached a copy of Judge Ashworth's June 28, 2019 opinion.

_____

[5] The trial court did not specifically address Appellant's claim that the October 10, 2017 search warrant was invalid because Detective Weber, the affiant, omitted material facts from the affidavit in support of probable cause. Appellant's Brief at 23-27. In particular, Appellant claims that Detective Weber omitted the following information: (1) an inventory of every item recovered from Appellant's trash; (2) the fact that Detective Weber did not, himself, observe Appellant driving his vehicle to Philadelphia, Pennsylvania; and, (3) the fact that Appellant's vehicle was parked at a different location in Lancaster for several hours between October 9, 2017 and October 10, 2017. *Id*. Herein, we conclude that the alleged omissions cited by Appellant were not "highly relevant" to the magistrate's finding of probable cause. ***Commonwealth v. Taylor***, 850 A.2d 684, 689 (Pa. Super. 2004). We are therefore satisfied that the affidavit of probable cause did not contain material omissions that invalidated the October 10, 2017 search warrant. As such, Appellant's third and fourth issues are meritless and he is not entitled to relief.

- 4 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/18/2020

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
### C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :
:
v. : No. 6227 - 2017
:
MILIK EMIL PINNOCK :

**OPINION SUR PA.R.A.P. 1925(a)**

BY:  ASHWORTH, J., JUNE 28, 2019

Milik Emil Pinnock has filed a direct appeal to the Superior Court of Pennsylvania from the judgment of sentence imposed on May 3, 2019. This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, and, for the following reasons, this court requests that the appeal be dismissed.

### I.  Background

The relevant facts, as established at the stipulated bench trial, and the procedural history of this case may be summarized as follows. On October 6, 2017, the Honorable Howard F. Knisely signed an order authorizing installation of a global positioning system (GPS) mobile tracking device on the Honda Accord owned by Appellant. The application and affidavit presented to Judge Knisely asserted there was probable cause to believe Appellant's vehicle was involved in or connected to criminal activity, specifically, the sale of cocaine purchased in Philadelphia but distributed within Lancaster. The GPS tracker was installed on the vehicle on the morning of October 9,

2017, pursuant to 18 Pa.C.S.A. § 5761. That day, Appellant's vehicle traveled to and from Philadelphia.

On October 10, 2017, at approximately 1:10 p.m., members of the Lancaster County Drug Task Force seized Appellant, searched his vehicle and entered his residence at 541 North Plum Street in the City of Lancaster pursuant to a valid search warrant. During the search of the residence, Detectives located approximately 263.34 grams of cocaine, $1,073.00 in U.S. currency, two digital gram scales, sandwich bags, and a gallon size bag and two quart size bags with cocaine residue. See Suppression Hearing Commonwealth Trial Exhibits 3-6. The seizure and arrest of Appellant resulted in the Commonwealth obtaining additional controlled substances on his person. Subsequent to his arrest, Appellant was administered his **Miranda**[1] warnings by Detective Jason Zeigler of the Drug Task Force, waived his rights, and ultimately provided a statement admitting the cocaine, paraphernalia and money were his and that he was selling cocaine. See Suppression Hearing Commonwealth Trial Exhibits 7 & 8.

Based upon his incriminating statements and the evidence seized from his residence and person, Appellant was charged with possession with intent to deliver (PWID) cocaine, and possession of drug paraphernalia.[2] Ultimately, these charges were docketed to Information No. 6227 of 2017.

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] 35 P.S. § 780-113(a)(30), and 35 P.S. § 780-113(a)(32), respectively.

2

At Appellant's arraignment on October 10, 2017, bail was set at $200,000.00, secured, and he was committed to Lancaster County Prison (LCP). On November 15, 2017, Appellant appeared for his preliminary hearing and bail was changed from $200,000.00 secured to $200,000.00 unsecured. This resulted in Appellant being transported from LCP to SCI-Dallas, based upon a state parole detainer lodged against Appellant.

Appellant remained at SCI-Dallas as his case proceeded at the Lancaster County Court of Common Pleas level. Appellant filed multiple omnibus pre-trial motions[3] containing claims that were presented and addressed at a suppression hearing on July 13, 2018. Specifically, Appellant moved to suppress the controlled substances and paraphernalia seized from his person and residence, as well as the statements made by Appellant. Following the suppression hearing, counsel for the parties submitted memoranda in support of and in opposition to suppression. By Order dated October 2, 2018, Appellant's suppression claims were denied. I determined that (1) sufficient probable cause existed for the authorization of the installation of the mobile tracking device, and (2) there were no deliberate misstatements and/or

---

[3]On January 24, 2018, Appellant filed an omnibus pretrial motion challenging the affidavit of probable cause related to the search warrant executed on Appellant's home and vehicle, as well as the custodial statements made by him to the police. On March 12, 2018, Appellant filed a supplemental omnibus pretrial motion challenging the affidavit of probable cause related to the application for installation of the GPS mobile tracking device on Appellant's vehicle. On May 30, 2018, Appellant filed a second supplemental omnibus pretrial motion where he supplemented his prior claims to include an allegation of intentional omissions and misstatements material to any potential finding of probable cause made by the affiant in both the search warrant's affidavit of probable cause and the affidavit of probable cause within the GPS tracking device application.

3

omissions within the search warrant's affidavit that were material to any potential finding of probable cause.

On January 25, 2019, Appellant appeared before the undersigned for a stipulated bench trial. At the conclusion of the trial, Appellant was found guilty of both charges. Sentencing was deferred pending a presentence investigation (PSI). The PSI report was completed and docketed on March 8, 2019.

On April 30, 2019, Appellant filed a motion for extraordinary relief requesting that his convictions be vacated and that he be immediately discharged from any form of unsecured bail-related confinement on this docket because of the court's failure to sentence him within 90 days of conviction, as statutorily required by Pa.R.Crim.P. 704. No formal action was taken on Appellant's motion prior to the scheduled sentencing on May 3, 2019. At that time, the motion was argued by the parties, and orally denied from the bench.[4] Notes of Testimony (N.T.), Sentencing at 3.

---

[4]Pinnock argued that the trial court violated his rights to due process and a speedy trial, because it failed to sentence him within the 90-day time period that Pennsylvania Rule of Criminal Procedure 704 indicates. "[S]entence in a court case shall ordinarily be imposed within 90 days of conviction...." Pa.R.Crim.P. 704. The sentencing here did occur outside the ordinary time frame of 90 days, but this court held that Pinnock was not entitled to relief (i.e., discharge of his sentence) due to a mere eight-day delay.

In Commonwealth v. Anders, 555 Pa. 467, 725 A.2d 170 (1999), the Supreme Court of Pennsylvania mandated that 'the trial court should consider' four factors to determine whether a delay outside the ordinary 90 days established in the Rules of Criminal Procedure warrants discharge of the case. . . . Those factors are:

(1) the length of the delay falling outside of Rule 1405(A)'s 60-day and good -cause provisions, (2) the reason for the improper delay, (3) the defendant's timely or untimely assertion of his rights, and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. . . . . Prejudice should not be presumed by the mere fact of an untimely sentence. 'Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists.'. . . The court should

4

At the sentencing hearing on May 3, 2019, Appellant received a sentence of 7 to 14 years' incarceration in a state correctional institution for the PWID conviction. N.T., Sentencing at 13. For the possession of drug paraphernalia conviction, only costs were imposed. Id. at 14. Appellant was eligible for a recidivism risk reduction incentive (RRRI) sentence of 5 years and nine months' incarceration. Id. at 13. Appellant was represented at his suppression hearing, stipulated bench trial, and sentencing by privately-retained counsel, Alan G. Goldberg, Esquire.

The Public Defender's Office, specifically, David Romano, Esquire, entered his appearance on behalf of Appellant on May 23, 2019. A timely notice of appeal to the Superior Court of Pennsylvania was filed by new counsel on June 3, 2019. See 900 MDA 2019. Pursuant to this Court's directive, on June 26, 2019, Appellant filed a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)

---

examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation. . . .

Id.

Commonwealth v. Neysmith, 192 A.3d 184, 191-92 (Pa. Super. 2018) (citations and footnote omitted). The Neysmith Court noted that this block quote in Anders, supra, refers to Pa.R.Crim.P. 1405, now Pa.R.Crim.P. 704. Rule 1405 had a 60-day window for sentencing, which Rule 704 now extends to 90 days. See id. at 192 n.7.

At the time of conviction on January 25, 2019, Pinnock waived his right to a PSI but I felt I did not have sufficient information to make an informed decision with regard to the appropriate sentence. Therefore, I ordered a PSI, which was originally scheduled for February 1, 2019. However, Pinnock, who was in the custody of the Department of Corrections on previous matters unrelated to this action, had to be writted in for the PSI because the DOC does not allow video conferencing for PSIs. Pinnock was returned to Lancaster County on February 14, 2019, and remained here until February 21, 2019, during which time the PSI was performed. The final PSI report was filed on March 8, 2019. However, because of my court calendar, and the unavailability of counsel, the sentencing could not be scheduled until May 3, 2019, eight days beyond the 90 days directed by Rule 704. N.T., Sentencing at 3-4.

Applying the four Anders factors to the facts of this case, it was clear that the need for a PSI report was "good cause" for a mere eight-day delay which did not prejudice Pinnock in any substantial way.

5

which raises the following issues: (1) whether the affidavit of probable cause in support of the authorization for the October 6, 2017, court order[5] authorizing installation of the mobile tracking device provided sufficient facts to establish probable cause to believe that the vehicle was involved in criminal activity; (2) whether the affidavit of probable cause for the warrant issued on October 10, 2017, provided sufficient facts to establish probable cause to believe Appellant's residence would contain evidence of drug activity; (3) whether the affidavit of probable cause contained deliberate misstatements and omissions that were material to the finding of probable cause to issue the October 10, 2017, search warrant; and (4) whether, without the GPS tracking device data and the information affected by the misstatements contained in the affidavit of probable cause for the October 10, 2017, search warrant, the remaining portions of the affidavit were capable of establishing probable cause to believe evidence of drug activity would be found in Appellant's residence on October 10, 2017. See Statement of Errors at ¶¶ 1-4.

II.     Discussion

Appellant contends that the Court erred in denying his suppression motion where "[t]he search conducted pursuant to a search warrant . . . was issued without sufficient probable cause." Statement of Errors at 1. In reviewing the denial of a suppression motion, the appellate court must determine

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before

---

[5]In his Statement of Errors, Appellant misstates the date of the court order authorizing installation of the mobile tracking device as October 3, 2017. See Statement of Errors at ¶ 1.

6

the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Jones,** 605 Pa. 188, 198, 988 A.2d 649, 654 (2010) (internal citations and quotations omitted). In appeals from suppression orders, the scope of review is limited to the evidence produced at the suppression hearing. **In re L.J.,** 622 Pa. 126, 152, 79 A.3d 1073, 1088-89 (2013). The Commonwealth bears the sole burden of proof to establish by a preponderance of the evidence that the challenged evidence is admissible and that it was not obtained in violation of the defendant's constitutional rights. Pa.R.Crim.P. 581(H). *See also* **Commonwealth v. Enimpah,** 630 Pa. 357, 368, 106 A.3d 695, 701 (2014).

The evidence at the suppression hearing established the following facts.[6] Detective Adam T. Weber, a member of the Lancaster County Drug Task Force, prepared the application and affidavit of probable cause for the search warrant issued on October 10, 2017. N.T., Suppression at 7-8; *see also* Commonwealth Exhibit 1.

---

[6]Pennsylvania Rule of Criminal Procedure 203(D) states: "At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in [Rule 203](B)." This rule, however, does not speak to the evidence the suppression court may consider when a defendant challenges veracity or omission of facts in the affidavit, which is the situation before us. *See* **Commonwealth v. James,** 620 Pa. 465, 477, 69 A.3d 180, 187 (2013).

7

During September 2017, Detective Weber spoke with Pennsylvania State Parole Agent Damien Mscisz regarding Appellant. Agent Mscisz confirmed that Appellant was on state parole for felony drug violations and that he was living at 541 North Plum Street in Lancaster City with his girlfriend. Id. at 8-9, 13; see also Commonwealth Exhibit 1, Affidavit of Probable Cause at ¶ 10. Detective Weber testified that he knew Appellant's girlfriend and her family have lived in Lancaster for several years. Id. at 13.

On October 9, 2017, Detective Weber and another Detective with the Drug Task Force conducted a trash pull from a black trash bag on the sidewalk directly in front of the residence at 541 North Plum Street. N.T., Suppression at 9; see also Commonwealth Exhibit 1, Affidavit of Probable Cause at ¶ 14. Upon executing a search of the abandoned trash, the Detectives found, inter alia, one clear plastic sandwich bag containing white powder residue, five clear plastic corner cut/torn sandwich bags, a pair of used rubber gloves, two dryer sheets, and a piece of a Giant grocery store circular with the address of 541 North Plum Street. Commonwealth Exhibit 1, Affidavit of Probable Cause at ¶ 14.

Through a tracking device, Detective Weber was able to confirm that Appellant's gray Honda Accord left his residence at approximately 2:45 p.m., drove directly to Philadelphia, arriving at approximately 5:00 p.m. Commonwealth Exhibit 1, Affidavit of Probable Cause, ¶ 17. The vehicle stayed in Philadelphia a couple hours and then drove directly back to Appellant's neighborhood, arriving at Hamilton Street at approximately 9:46 p.m.[7] Id.; see also N.T., Suppression at 10; see also Defendant's

---

[7]Appellant's residence at 541 North Plum Street is on the corner of North Plum Street and Hamilton Street.

8

Exhibit 1. At approximately 12:37 a.m. on the morning of October 10, 2017, Appellant's vehicle became stationary in the 400 block of East Frederick Street, just around the corner from his residence at 541 North Plum Street, and remained there all night until approximately 6:57 a.m. Id.; see also N.T., Suppression at 20-21; see also Defendant's Exhibit 1. On the morning of October 10, 2017, Appellant's vehicle took two short-term trips to and from the area of the residence. N.T., Suppression at 11, 19; see also Defendant's Exhibit 1.

Detective Weber testified that during "several surveillances" he had only ever seen Appellant driving his car. N.T., Suppression at 22. He explained: "I've watched him at least on 10 different occasions for anywhere from a few seconds to, you know, 10 to 15 minutes at a time where I've seen him driving and no one else in the vehicle but him." Id. at 23.

Based upon these facts and others set forth in the affidavit of probable cause, Detective Weber believed Appellant purchased a large quantity of cocaine in Philadelphia on October 9, 2017, and returned with it to 541 North Plum Street in Lancaster City. Commonwealth Exhibit 1, Affidavit of Probable Cause at ¶ 19. On October 10, 2017, the tracking device revealed that Appellant's vehicle was making short term trips from 541 North Plum Street and then immediately returning to his residence. Id.; see also N.T., Suppression Hearing at 11. Detective Weber viewed this activity as consistent with the drug activity reported by his CI as set forth in the affidavit of probable cause. Commonwealth Exhibit 1, Affidavit of Probable Cause at ¶¶ 3-9, 19.

Appellant argued at his suppression hearing and argues now on appeal that there was insufficient probable cause for the October 6, 2017, court order authorizing

9

installation of the mobile tracking device on Appellant's vehicle, and for the search warrant issued on October 10, 2017, for Appellant's residence and vehicle, and, further, that there were material misstatements and omissions of facts that would invalidate the October 10, 2017, search warrant.

### A.    Mobile Tracking Device

In **Commonwealth v. Burgos**, 64 A.3d 641 (Pa. Super. 2013), our Superior Court held that "the attachment and monitoring of a GPS tracking device to [a target's] car constitute[s] a 'search' under the Fourth Amendment." Id. at 652 (footnote omitted). See also **United States v. Jones**, 565 U.S. 400, 404 (2012) ("We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'"). Therefore, "in order for the police to attach and monitor a GPS tracking device to an individual's vehicle in Pennsylvania, the police must have probable cause." **Burgos**, supra at 652.

On October 6, 2017, Judge Knisely signed an order authorizing Detective Weber to place a GPS mobile tracking device on Appellant's Honda Accord. In issuing the order, Judge Knisely made a finding of probable cause, which is what is required by **Burgos**, supra, and the Pennsylvania Wiretapping and Electronic Surveillance Control Act. Section 5761 of the Act provides, in relevant part:

> An order authorizing the use of one or more mobile tracking devices may be issued to an investigative or law enforcement officer by the court of common pleas upon written application. Each application shall be by written affidavit, signed and sworn to or affirmed before the court of common pleas. The affidavit shall:

10

> (1) state the name and department, agency or address of the affiant;
> (2) identify the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed, and the names of the owners or possessors of the vehicles, containers or items;
> (3) state the jurisdictional area in which the vehicles, containers or items are expected to be found; and
> (4) provide a statement setting forth all facts and circumstances which provide the applicant with *probable cause* that criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity.

18 Pa.C.S.A. § 5761(c) (emphasis added). The Court in **Burgos**, *supra*, concluded that the wiretap orders which "serve as the functional equivalent of traditional search warrants[,] . . . are statutorily prescribed orders, approved and issued by the judiciary, which allow an investigating officer to conduct a search via interception of an individual and his or her property and effects, upon a showing of the requisite level of suspicion." **Burgos**, 64 A.3d at 655.

Here, the Drug Task Force obtained a court-authorized order, pursuant to section 5761, for attaching the GPS tracking device to Appellant's vehicle. The Order of Court used the language, "there is probable cause to believe that criminal activity has been, is being, or will be in progress and that the use of a mobile tracking device attached to or placed in or on a vehicle identified as a 2017 gray in color Honda Accord sedan . . . will yield information relevant to the investigation of the criminal activity." *See* Suppression Hearing Commonwealth Exhibit 2.

The question posed by Appellant's suppression motion was whether the wiretap order was supported by probable cause under section 5761. The **Burgos** Court noted

11

that the standard for determining whether probable cause existed for an order authorizing a GPS tracking system is the same as that used to determine probable cause for search warrants. 64 A.3d at 655. Probable cause "does not require a *prima facie* showing of criminal activity on the part of the occupants of the premises to be searched." Id. (*quoting* **Commonwealth v. Gutierrez**, 969 A.2d 584, 588 (Pa. Super. 2009)). Rather, there need only be a "fair probability" that contraband or evidence of a crime will be found in a particular place. As explained by the Superior Court in **Burgos**:

> The question of whether probable cause exists for a wiretap must be adjudged by the totality of the circumstances. Pursuant to the 'totality of the circumstances' test set forth by the United States Supreme Court . . . the task of [the trial court] is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Thus, the totality of the circumstances test permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip[.]

64 A.3d at 655 (citation omitted). Moreover, the reviewing court must limit its inquiry to the information within the four corners of the "affidavit for installation and use of a mobile tracking device" to determine if there was probable cause to support the officer's request for a wiretap order. *See* Pa.R.Crim.P. 203(B) ("The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside of the affidavits.").

Under the totality of the circumstances test, this court was satisfied that the information provided in the affidavit rose to the necessary level of probable cause.

12

"Probable cause is not certitude, nor even preponderance; rather, it is merely a sufficiently substantive probability to justify the intrusion involved." **Commonwealth v. Doria**, 574 A.2d 653, 657 (Pa. Super. 1990) (concurrence). *See also* **Commonwealth v. Glass**, 562 Pa. 187, 201, 754 A.2d 655, 663 (2000) ("Probable cause is a 'practical, nontechnical conception: it 'is a fluid concept – turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'") (*quoting* **Illinois v. Gates**, 462 U.S. 213, 231-32 (1983)).

Here, Detective Weber submitted the affidavit in support of the application for an order authorizing the installation and use of a mobile tracking device on Appellant's vehicle. He averred that during the month of September 2017, he spoke with a reliable CI (CI #1) who related that he/she had personal knowledge of a man named "Biz" selling large quantities of cocaine from a gray 2017 Honda Accord sedan in Lancaster. This CI had purchased cocaine from "Biz" from the Honda as recently as September 2017. *See* Suppression Hearing Commonwealth Exhibit 2 at ¶ 4.

Detective Weber knew Appellant used the alias "Biz," and further that he fit the CI's description of the dealer. A search of the J-Net database produced a photograph of Appellant, which CI #1 positively identified as "Biz." *See* Suppression Hearing Commonwealth Exhibit 2 at ¶¶ 5-6. The J-Net database provided an address of 541 North Plum Street, Lancaster, for Appellant. Id. at ¶ 5. During the month of September 2017, Detective Weber observed a gray 2017 Honda Accord sedan parked in the area of 541 North Plum Street. This vehicle matched CI #1's description of Appellant's vehicle. Id. at ¶ 7. A check of the registration for the license plate on the Honda

13

Accord showed that the vehicle was registered to Appellant at 541 North Plum Street. Id. at ¶ 8.

During the month of September 2017, Detective Weber spoke to a second reliable CI (CI #2) who related that he/she also had personal knowledge of Appellant selling large quantities of cocaine from his Honda Accord in Lancaster, and that Appellant lived at an unknown address in the 500 block of North Plum Street. *See* Suppression Hearing Commonwealth Exhibit 2 at ¶ 9. This CI further stated that, based upon conversations with Appellant, he knew Appellant was driving his vehicle to Philadelphia to pick up large quantities of cocaine and bringing it back to Lancaster to sell. Id. This second CI was able to positively identify Appellant from the J-Net photograph. Id. at ¶ 10.

Detective Weber conducted surveillance of Appellant during September and October of 2017. Appellant was observed on at least two occasions exiting his residence at 541 North Plum Street and getting into his Honda Accord and driving to various locations in Lancaster, meeting with unknown subjects for a short period of time, and then returning to his residence. *See* Suppression Hearing Commonwealth Exhibit 2 at ¶ 11. Detective Weber viewed these short-term meetings as consistent with drug trafficking. Id. A criminal history check of Appellant in October of 2017 revealed that Appellant had pleaded guilty to felony violations of the Drug Act on September 16, 2013. Id. at ¶ 12.

This collected information was analyzed by Detective Weber, who had 14 years experience in the investigation of crimes and seizure of evidence within Pennsylvania and who has received extensive field training and attended formal classes and has

14

experience in controlled substance identification, field-testing, packaging, pricing and paraphernalia, through patrol interdictions, interviews and surveillances. As of 2017, Detective Weber had been involved in over 1700 investigations involving violations of the Drug Act, as either the prosecutor, a witness, an undercover officer, or in a surveillance capacity. He also had experience in debriefing defendants, witnesses, informants and other persons who have knowledge and experience using, amassing, spending, converting, transporting, distributing and concealing controlled substances.

In light of this training, experience and expertise, Detective Weber averred that there was probable cause to believe that Appellant was involved in the distribution of cocaine in Lancaster and that he used his Honda Accord to facilitate that distribution. Detective Weber, therefore, requested a mobile tracking device for Appellant's vehicle, and Judge Knisely authorized it.

After a review of the affidavit's four corners, this court determined, based on a totality of the circumstances, that there was probable cause to believe that Appellant was distributing cocaine and to support Detective Weber's request for a mobile tracking device. This court found CI #1 to be a reliable source, and the information provided by him regarding his purchase of cocaine from Appellant to be reliable and not too remote in time to negate probable cause. Likewise, CI #2 was determined to be reliable and his information neither stale nor nonspecific for purposes of evaluating probable cause. Judge Knisely had a substantial basis to find probable cause existed to believe Appellant's vehicle was involved in criminal activity or that the vehicle being tracked would yield information relevant to a drug investigation. Accordingly, Appellant's motion to suppress all evidence obtained by the mobile tracking device was properly denied.

15

## B. Search Warrant for Vehicle and Residence

On October 10, 2017, a search warrant for Appellant's vehicle and residence was signed and issued by Magisterial District Judge Janice Jimenez. The affidavit of probable cause in support of the search warrant re-stated all of the information contained in the affidavit offered in support of the application for the installation of the mobile tracking device, including the information regarding the confidential informants, the surveillances of Appellant and his home, his criminal history, and confirmation of the vehicle registration, as well as Detective Weber's training and experience. *See* Suppression Hearing Commonwealth Exhibit 1 at ¶¶ 1, 3-9, 11-12. The affiant, Detective Weber, however added two additional pieces of information for the search warrant.

First, Detective Weber provided details regarding a trash pull outside Appellant's residence. *See* Suppression Hearing Commonwealth Exhibit 1 at ¶ 14. Discovered in one of the abandoned trash bags was a clear plastic sandwich bag containing white powder residue. Id. Detective Weber performed a field test on a portion of the powder residue from the bag and a positive result was obtained for the presence of cocaine. Id. at ¶ 15. In addition to the sandwich bag, Detective Weber seized five clear plastic corner cut/torn sandwich bags, a pair of used rubber gloves, and two dryer sheets. Id. at 14. Based on his training and experience, Detective Weber averred that dealers often put a quantity of cocaine in the corner of a plastic bag, then twist or cut or tear the corner off of the bag and then tie the open end to package the drug for sale. Moreover, in his experience, rubber gloves are commonly worn while handling, cutting, cooking

16

powder cocaine into crack cocaine, and packaging narcotics. Finally, Detective Weber stated that dryer sheets are commonly used to mask the scent of drugs so that law enforcement officers and their K-9s cannot detect the scent of drugs. Id. at ¶ 16.

The second significant piece of information added to the affidavit for the search warrant was that Detective Weber had installed a mobile tracking device on Appellant's vehicle pursuant to a court-authorized order. See Suppression Hearing Commonwealth Exhibit 1 at ¶ 13. This device provided information that Appellant's vehicle had made a round trip to Philadelphia on October 9, 2017, between the hours of 2:45 p.m. and 9:46 p.m. Id. at ¶ 17.

The affidavit also listed practices that, based on Detective Weber's experience, were common to individuals involved in drug trafficking. See Suppression Hearing Commonwealth Exhibit 1 at ¶ 2. Such practices included that dealers will "make trips to large cities, such as Philadelphia, to buy their product because they are able to purchase at a lower price and can make a larger profit selling it in smaller cities." Id. at ¶ 17. Moreover, Detective Weber noted that drug traffickers "commonly keep quantities of drugs and paraphernalia in their vehicles when utilizing their vehicles to transport drugs and when using their vehicles during drug sales" and hide the drugs and contraband in "traps" or hidden compartments in the vehicle. Id, at ¶ 18.

Based upon the totality of these facts and circumstances, the magisterial district judge granted the search warrant. Appellant claimed at the suppression hearing, and claims now on appeal, that there was insufficient probable cause for this warrant and, further, that there were material misstatements and omissions of facts that would invalidate the October 10, 2017, search warrant.

17

As noted above, "search warrants may only issue upon probable cause and '[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.'" **Commonwealth v. Green**, 204 A.3d 469, 482 (Pa. Super. 2019) (*quoting* **Commonwealth v. Leed**, — Pa. —, 186 A.3d 405, 413 (2018) (*quoting* Pa.R.Crim.P. 203(B)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." Id. (*quoting* **Leed**, *supra*).

Here, the affidavit of probable cause indicated Appellant, a convicted drug offender, was selling, from his Honda Accord, large quantities of cocaine, which he bought in Philadelphia and transported back to Lancaster in his vehicle. Surveillance of Appellant's vehicle confirmed that Appellant was the only person known to drive the Honda Accord, registered to Appellant. A mobile tracking device on Appellant's vehicle confirmed a short round trip to Philadelphia on October 9, 2017, while a trash pull on the same date yielded evidence of cocaine in a sandwich baggie, along with other known drug paraphernalia. These facts presented by Detective Weber in the affidavit of probable cause created the probability that evidence of Appellant's drug dealing would be found in Appellant's home and vehicle. Because great deference is due the issuing magistrate, the search warrant was supported by sufficient probable cause. Therefore, Appellant's Fourth Amendment rights were not violated.

18

## III. Conclusion

For the reasons set forth above, it is respectfully requested that Milik Emil Pinnock's appeal from his judgment of sentence imposed on May 3, 2019, be dismissed.

Accordingly, I enter the following:

19

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :
                                 :

          v.                    :          No. 6227 - 2017

MILIK EMIL PINNOCK         :

## O R D E R

AND NOW, this 28th day of June, 2019, the Court submits this Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

Copies to:    Susan E. Moyer, Assistant District Attorney
               David Romano, Assistant Public Defender

CLERK OF COURTS
2019 JUN 28 PM 2: 36
LANCASTER COUNTY, PA